FILED

19 MAY -3 PM 3: 53

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: MMG   DEPUTY

5/17/19 AEF

UNSEALED PER ORDER OF COURT

~~SEALED~~

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

April 2018 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LUIS ANTONIO MENDEZ-BRAHAN (1),<br>  aka Tony,<br>  aka Tonio,<br>  aka Don Tony,<br>  aka Don Tonio,<br>CHRISTOPHER MENDEZ (2),<br>WENDY MONSERRATH MENDEZ (3),<br>NANCY JACQUELINE SUAREZ (4),<br><br>Defendants. | Case No. 19 CR 1570 JLS<br><br>I N D I C T M E N T<br><br>Title 18, U.S.C., Sec. 371 - Conspiracy; Title 8, U.S.C., Sec. 1324(a)(2)(B)(ii) - Bringing in Aliens for Financial Gain; Title 18, U.S.C., Sec. 2 - Aiding and Abetting; Title 18, U.S.C., Secs. 981(a)(1)(C) and 982(a)(1), and Title 28, U.S.C., Sec. 2461(c) - Criminal Forfeiture |

The grand jury charges that:

INTRODUCTORY ALLEGATIONS

At all times relevant to this indictment:

1. Defendant LUIS ANTONIO MENDEZ-BRAHAN, aka Tony, aka Tonio, aka Don Tony, aka Don Tonio, was a Mexican citizen and resided in Tijuana, Mexico.

2. Defendant LUIS ANTONIO MENDEZ-BRAHAN, aka Tony, aka Tonio, aka Don Tony, aka Don Tonio, was the father of codefendants CHRISTOPHER MENDEZ, WENDY MONSERRATH MENDEZ and NANCY JACQUELINE SUAREZ.

//

TDC:nlv:San Diego
5/1/19



3. Defendants CHRISTOPHER MENDEZ and WENDY MONSERRATH MENDEZ, who resided in Wasco, California, and defendant NANCY JACQUELINE SUAREZ, who resided in Madera, California, were United States citizens.

4. Western Union, Money Gram, Continental Exchange Solutions and Maxitransfers were Money Service Businesses that operated domestically and internationally and facilitated the wire transfer of money between the United States and foreign countries, to include Mexico.

## Count 1

## CONSPIRACY (18 U.S.C. § 371)

5. The grand jury realleges and incorporates by reference paragraphs 1 through 4 of this Indictment.

6. Beginning at a date unknown to the grand jury and continuing up to and including May 3, 2019, within the Southern District of California, and elsewhere, defendants LUIS ANTONIO MENDEZ-BRAHAN, aka Tony, aka Tonio, aka Don Tony, aka Don Tonio, CHRISTOPHER MENDEZ, WENDY MONSERRATH MENDEZ and NANCY JACQUELINE SUAREZ, did knowingly and intentionally conspire together and with other persons known and unknown to the grand jury, to commit an offense against the United States, to wit:

    a. To bring to the United States for the purpose of private financial gain, aliens, knowing that such aliens had not received prior official authorization to come to, enter, and reside in the United States, in violation of Title 8, United States Code, Section 1324(a)(2)(B)(ii);

    b. Knowing that aliens had come to, entered, and remained in the United States in violation of law, to transport and move within the United States said aliens, in furtherance of such

          violation of law, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii); and

    c.    To conduct a financial transaction that affected interstate and foreign commerce involving the proceeds of specified unlawful activity, to wit, acts indictable under Title 8, United States Code, Section 1324 committed for the purpose of financial gain, knowing that the property represented the proceeds of some form of unlawful activity and with the intent to promote the carrying on of the specified unlawful activity above; in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

Manner And Means of the Conspiracy

7. It was part of the conspiracy that beginning on a date unknown no later than 2014, defendant LUIS ANTONIO MENDEZ-BRAHAN, aka Tony, aka Tonio, aka Don Tony, aka Don Tonio, (hereinafter "MENDEZ-BRAHAN") organized and led a Transnational Criminal Organization, based in Tijuana, Mexico involved in alien smuggling and money laundering.

8. It was further part of the conspiracy that MENDEZ-BRAHAN would facilitate the illegal smuggling of undocumented aliens from Mexico into the United States through the Southern District of California.

9. It was further part of the conspiracy that MENDEZ-BRAHAN, or one of his co-conspirators, would make contact with undocumented aliens, in Tijuana, Mexico, to arrange for them to be brought into the United States illegally.

10. It was further part of the conspiracy that MENDEZ-BRAHAN would charge undocumented aliens between $6,000 and $8,000 to be illegally smuggled into the United States from Mexico.

11. It was further part of the conspiracy that MENDEZ-BRAHAN, would direct undocumented aliens or their sponsors to wire transfer a portion of the smuggling fee to MENDEZ-BRAHAN in Mexico, to defendants CHRISTOPHER MENDEZ, WENDY MONSERRATH MENDEZ and NANCY JACQUELINE SUAREZ in California, or to MENDEZ-BRAHAN's associates in Mexico.

12. It was further part of the conspiracy that MENDEZ-BRAHAN, would utilize associates or undocumented aliens located in Mexico as recipients of wire transfers to disguise his involvement in the smuggling operation.

13. It was further part of the conspiracy that MENDEZ-BRAHAN would recruit and utilize foot guides and drivers to smuggle undocumented aliens into the United States.

14. It was further part of the conspiracy that MENDEZ-BRAHAN and his associates would arrange for undocumented aliens to be transported from Tijuana to the Tecate, Mexico area and then smuggled into the United States in the Southern District of California.

15. It was further part of the conspiracy that MENDEZ-BRAHAN would arrange for spotters located in Mexico and scouts located in the United States to guide and direct groups of undocumented aliens smuggled into the United States.

16. It was further part of the conspiracy that MENDEZ-BRAHAN would arrange for the smuggled undocumented aliens to be transported further into the United States.

17. It was further part of the conspiracy that proceeds from alien smuggling activity were wire transferred by defendants CHRISTOPHER MENDEZ, WENDY MONSERRATH MENDEZ, NANCY JACQUELINE SUAREZ, or one of MENDEZ-BRAHAN's associates and delivered to MENDEZ-BRAHAN in Mexico.

## OVERT ACTS

In furtherance of the conspiracy, the conspirators committed the following overt acts, among others, in the Southern District of California and elsewhere:

a. In 2018, in Tijuana, Mexico, defendant LUIS ANTONIO MENDEZ-BRAHAN recruited Co-conspirator #1, Co-conspirator #2 and Co-conspirator #3, all charged elsewhere, to bring undocumented aliens from Mexico into the United States as well as assisting him in obtaining proceeds from the activity.

b. Between January and May 2018, in Tijuana, Mexico, Co-conspirator #3 received seven monetary wire transfers totaling $8,400 from defendant MENDEZ-BRAHAN'S family members and associates, constituting proceeds of MENDEZ-BRAHAN'S alien smuggling activities.

c. On or about January 4, 2018, in Madera, California, defendant NANCY SUAREZ received a wire transfer of $1,000 from an unindicted co-conspirator which represented a partial advance payment for smuggling an undocumented alien into the United States.

d. On or about January 27, 2018, in Wasco, California, defendant WENDY MENDEZ wire transferred $1,000 to Co-conspirator #3 in Tijuana, Mexico, knowing it was proceeds of alien smuggling.

e. On or about January 27, 2018, in Madera, California, defendant NANCY SUAREZ wire transferred $1,400 to Co-conspirator #3, in Tijuana, Mexico, knowing it was proceeds of alien smuggling.

f. On or about January 31, 2018, in Wasco, California, defendant CHRISTOPHER MENDEZ wire transferred $1,500 to an unindicted co-conspirator in Tijuana, Mexico, knowing it was proceeds of alien smuggling.

g. On or about March 13, 2018, in California, defendant CHRISTOPHER MENDEZ received a wire transfer of $900 from an unindicted co-conspirator which was partial payment for smuggling an undocumented alien into the United States.

h. On or about April 5, 2018, in Tijuana, Mexico, defendant MENDEZ-BRAHAN received a wire transfer of $500 from an unindicted co-conspirator which was partial payment for smuggling an undocumented alien into the United States.

i. Between July and August 2018, in Tijuana, Mexico, Co-conspirator #1 received four monetary wire transfers totaling $3,990 from MENDEZ-BRAHAN'S family members and associates, constituting proceeds of MENDEZ-BRAHAN'S alien smuggling activities.

j. On or about July 21, 2018, defendant WENDY MENDEZ received a wire transfer of $1,500 from an unindicted co-conspirator which was partial payment for smuggling an undocumented alien into the United States.

k. On or about July 21, 2018, in Wasco, California, defendant WENDY MENDEZ wire transferred $1,000 to Co-conspirator #1, in Tijuana, Mexico, knowing it was proceeds of alien smuggling.

l. On or about July 22, 2018, in Wasco, California, defendant CHRISTOPHER MENDEZ received a wire transfer of $2,000 from an unindicted co-conspirator which was partial payment for smuggling an undocumented alien into the United States.

m. On or about August 18, 2018, defendant MENDEZ-BRAHAN directed Co-conspirator #1 to guide eight undocumented aliens across the United States-Mexico border near Tecate, California.

//
//

n. On or about August 18, 2018, Co-conspirator #4, charged elsewhere, staged a vehicle east of the Tecate, California, Port of Entry, to transport the eight undocumented aliens that Co-conspirator #1 guided into the United States.

o. On or about September 28, 2018, defendant MENDEZ-BRAHAN directed Co-conspirator #2 to guide six undocumented aliens across the United States-Mexico border near Tecate, California.

p. On or about October 6, 2018, defendant MENDEZ-BRAHAN directed Co-conspirator #3 to guide eight undocumented aliens across the United States-Mexico border near Tecate, California.

q. On or about January 17, 2019, defendant MENDEZ-BRAHAN arranged for a group undocumented alien to be smuggled across the United States-Mexico border near Tecate, California.

All in violation of Title 18, United States Code, Sections 371 and 2.

## Counts 2-6

ALIEN SMUGGLING (8 U.S.C. § 1324 & 18 U.S.C. § 2)

On or about the dates set forth below, within the Southern District of California, defendant LUIS ANTONIO MENDEZ-BRAHAN, aka Tony, aka Tonio, aka Don Tony, aka Don Tonio, with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that the aliens listed below had not received prior official authorization to come to, enter and reside in the United States, did bring to the United States said aliens for the purpose of commercial advantage and private financial gain:

| Count | Date | Alien |
|---|---|---|
| 2 | January 6, 2018 | E.A.Z. |
| 3 | September 1, 2018 | A.D.V.G. |
| 4 | September 1, 2018 | J.J.J.F. |

7

| Count | Date | Alien |
|---|---|---|
| 5 | October 6, 2018 | E.H.V. |
| 6 | January 17, 2019 | R.M.T. |

in violation of Title 8, United States Code, Section 1324(a)(2)(B)(ii), and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATIONS

1. The allegations set forth in Counts 1 through 6 are realleged herein for purposes of seeking forfeiture to the United States of America pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and Title 28, United States Code, Section 2461(c).

2. Upon the conviction of the offense alleged in Count 1 of this Indictment, defendants LUIS ANTONIO MENDEZ-BRAHAN, aka Tony, aka Tonio, aka Don Tony, aka Don Tonio, CHRISTOPHER MENDEZ, WENDY MONSERRATH MENDEZ and NANCY JACQUELINE SUAREZ, shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 982(a)(1) all property, real and personal, involved in the offense and any property traceable to such offense.

3. Upon the conviction of the offenses alleged in Counts 2-6 of this Indictment, defendant LUIS ANTONIO MENDEZ-BRAHAN shall forfeit to the United States of America pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c) any property, real and personal, which constitutes or is derived from proceeds traceable to the violation.

4. In the event that any of the property described above, as a result of any act or omission of the defendants:

//
//
//

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeit substitute property up to the value of the above described property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b) and Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and Title 28, United States Code, Section 2461(c).

DATED: May 3, 2019.

A TRUE BILL:

_[signature]_
Foreperson

ROBERT S. BREWER, JR.
United States Attorney

By: _[signature]_
TIMOTHY D. COUGHLIN
Assistant U.S. Attorney

9